**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

MONARCH NETWORKING SOLUTIONS LLC,

        Plaintiff,

v.

JUNIPER NETWORKS, INC.,

        Defendant.

Case No. 1:23-cv-00670-TSE-LRV

**REPLY IN SUPPORT OF JUNIPER'S MOTION TO TRANSFER**
**VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ...........................................................................................................1

II.     MONARCH'S CHOICE OF FORUM IS ENTITLED TO LITTLE WEIGHT .................2

III.    THE NORTHERN DISTRICT OF CALIFORNIA IS MUCH MORE CONVENIENT FOR THE PARTIES ..................................................................................5

IV.     THE NORTHERN DISTRICT OF CALIFORNIA IS MUCH MORE CONVENIENT FOR WITNESSES ..................................................................................8

V.      THE INTERESTS OF JUSTICE STRONGLY FAVOR TRANSFER............................14

        A.      The Local Interest Strongly Favors Transfer ........................................................14

        B.      Court Congestion Has Little If Any Relevance .....................................................15

VI.     CONCLUSION.............................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

### <u>Cases</u>

*Acterna, LLC v. Adtech, Inc.*,
  129 F. Supp. 2d 936 (E.D. Va. 2001) ........................................................................4

*Agilent Techs., Inc. v. Micromuse, Inc.*,
  316 F. Supp. 2d 322 (E.D. Va. 2004) ........................................................................3

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020)..................................................................9, 14, 16

*In re Apple Inc.*,
  No. 20-135, Dkt. 2-1 (Fed. Cir. June 16, 2020) ........................................................9

*Beam Laser Systems, Inc. v. Cox Communications, Inc.*,
  117 F. Supp. 2d 515 (E.D. Va. 2000) ......................................................................4, 5

*Board of Trustees, Sheet Metal Workers National Fund v. Baylor Heating & Air
  Conditioning, Inc.*,
  702 F. Supp. 1253 (E.D. Va. 1988) ...........................................................................9

*Certusview Technologies, LLC v. S&N Locating Services, LLC*,
  No. 2:13-cv-346, 2013 WL 6571833 (E.D. Va. Dec. 13, 2013)..........................4, 15

*Convergence Techs. (USA), LLC v. Microloops Corp.*,
  711 F. Supp. 2d 626 (E.D. Va. 2010) .......................................................................16

*Core Optical Techs., LLC v. Juniper Networks, Inc.*,
  8:19-cv-02189-JAK-RAO (C.D. Cal. Nov. 12, 2019)...............................................3

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009)....................................................................6, 8, 16

*Global Touch Sols., LLC v. Toshiba Corp.*,
  109 F. Supp. 3d 882 (E.D. Va. 2015) ........................................................................2

*Graphon Corp. v. Juniper Networks, Inc.*,
  No. C 10-1412 JSW, 2010 WL 3619579 (N.D. Cal. Sept. 13, 2010).......................6

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009)................................................................................15

*JTH Tax, Inc. v. Hines*,
  No. 2:15-cv-558, 2016 WL 4582081 (E.D. Va. July 26, 2016)................................9

*In re Juniper Networks, Inc.*,
    14 F.4th 1313 (Fed. Cir. 2021) ................................................................. 7, 8, 12, 14, 1615-6

*In re Juniper Networks, Inc.*,
    No. 21-156, 2021 WL 4519889 (Fed. Cir. Oct. 4, 2021).......................................................8

*Koh v. Microtek International, Inc.*,
    250 F. Supp. 2d 627 (E.D. Va. 2003) ......................................................................9

*Lycos, Inc. v. TiVo, Inc.*,
    499 F. Supp. 2d 685 (E.D. Va. Aug. 3, 2007)...........................................................4

*Mira Advanced Tech. Sys. Inc. v. Google LLC*,
    No. 1:21-cv-00371-TSE-JFA, Dkt. 47 (E.D. Va. Sept. 22, 2021)................................8, 15, 16

*In re Morgan Stanley*,
    417 F. App'x 947 (Fed. Cir. 2011) .......................................................................16

*NanoEntek, Inc. v. Bio-Rad Labs., Inc.*,
    No. 2:11-cv-427, 2011 WL 6023189 (E.D. Va. Dec. 2, 2011)................................3, 4

*Orbital Austl. Pty Ltd v. Daimler AG*,
    No. 3:14-cv-808, 2015 WL 4042178 (E.D. Va. July 1, 2015)................................8

*Pragmatus AV, LLC v. Facebook, Inc.*,
    769 F. Supp. 2d 991 (E.D. Va. 2011) ...................................................................16

*In re Samsung Elecs. Co., Ltd.*,
    2 F.4th 1371 (Fed. Cir. 2021) .......................................................................14, 15, 16

*Telepharmacy Solutions, Inc. v. Pickpoint Corp.*,
    238 F. Supp. 2d 741 (E.D. Va. 2003) ................................................................ 9-10

*Trustees of Columbia University v. Symantec Corp.*,
    No. 3:13-cv-808, 2014 WL 1329417 (E.D. Va. Apr. 2, 2014) .................................4

## Rules/Statutes

28 U.S.C. § 1404(a) ...................................................................................7

Fed. R. Civ. P. 45...................................................................................12

Fed. R. Civ. P. 45(c) ...............................................................................12

## I.    INTRODUCTION

Monarch, despite submitting 80 exhibits' worth of red herrings, fails to meaningfully dispute the critical facts warranting transfer to the Northern District of California.  Monarch does not dispute that it is a non-practicing entity, or that courts in this District have held that its choice of forum is entitled to minimal weight as a result.  Nor does it deny that *both* parties are headquartered in California.  Instead, Monarch contorts the facts and misconstrues the law in an effort to support its facially incorrect argument that *Virginia* is a more convenient venue than *California* for two *California-based* companies.  Monarch also cannot meaningfully contest that Juniper identified several witnesses with specific design, development, and marketing knowledge relating to the Accused Products and Features based at Juniper's Sunnyvale, California headquarters, and does not claim that Monarch has a single witness in or near this District.  Instead, Monarch offers LinkedIn profiles of 14 Juniper employees (out of Juniper's over 10,000 total employees worldwide) in or near this District who it alleges perform services related to certain Accused Products or Features.  As Juniper's motion explained, these individuals do not have knowledge or experience *specific* to the relevant products and features, and certainly none of the design and development knowledge that might make them relevant witnesses in a patent infringement suit.  And in addition to failing to refute Juniper's argument that multiple third-party witnesses are in the Northern District of California (or at least much closer to that district than to this one), Monarch's opposition establishes that two of its own officers are much closer to the Northern District of California *and* subject to compulsory process there but not in this Court. Monarch's arguments on the interest of justice fare no better.  Its attempt to argue that Juniper's general presence in this District creates a local interest that exceeds that of Juniper's *home district* flouts established Federal Circuit caselaw analyzing the issue specifically as to Juniper.  So does its heavy reliance on speculative court congestion statistics.

Thus, Juniper respectfully asks that the Court grant its motion and transfer this case to the Northern District of California.

## II.    MONARCH'S CHOICE OF FORUM IS ENTITLED TO LITTLE WEIGHT[1]

Monarch devotes a full seven pages to arguing its choice of forum is entitled to substantial weight without saying a word about the undisputed dispositive fact that proves otherwise.  Opp. at 7-14.  Monarch does not dispute that it is a non-practicing entity, and does not address the cases holding that a non-practicing entity's "choice of forum is afforded minimal weight."  *Global Touch Sols., LLC v. Toshiba Corp.*, 109 F. Supp. 3d 882, 898 (E.D. Va. 2015).  Importantly, even where this District "is assumed to be [the plaintiff's] home forum in the technical sense, as a non-practicing entity that does not even maintain an office in this district with a single full-time employee, [its] choice of forum is afforded minimal weight by the Court."  *Id.*  Here, the facts present an even clearer case for transfer.  Monarch admits that this District is not its home even in the technical sense—it is a California corporation with its principal place of business in California, and it has no officers or employees in or near this District.  Opp. at 7, 14.

Thus, Monarch's argument that it "could not 'choose' to sue Juniper in Monarch's home, the Central District of California, because Juniper does not reside there and has no 'established place of business' there" (Opp. at 7-8) would be legally irrelevant even if it were factually correct, which it is not.  Juniper has an office in Goleta, California, near Santa Barbara and squarely within the Central District of California.  Indeed, patent plaintiffs have relied on that office in laying

---

[1] Monarch argues that the Court should give it the benefit of the doubt on any factual issues because it contends Juniper refused to allow discovery.  In reality, Monarch told Juniper it would seek venue discovery, Juniper said it would oppose, and Monarch never sought any such discovery despite getting a full four-week extension for its opposition during which it could have done so.  Dkts. 45-46.  Monarch's failure to seek venue discovery means it must have been satisfied with the public information it included in its opposition, and certainly it is not entitled to the benefit of any doubt based on discovery it made a strategic decision not to pursue.

venue against Juniper in the Central District. *See Core Optical Techs., LLC v. Juniper Networks, Inc.*, 8:19-cv-02189-JAK-RAO, Dkt. 1 ¶ 5 (C.D. Cal. Nov. 12, 2019). To be clear: Juniper successfully moved to transfer that case to the Northern District of California, and does not contend or concede that the Central District is a convenient venue in which to try this or any other case. But Monarch's argument that it could not sue Juniper in its home district because Juniper has no established place of business there is simply wrong. Monarch is thus right back where it started: a non-practicing entity that chose to sue a continent away from its home forum (and Juniper's home forum), and whose choice of venue is thus entitled to minimal if any weight in the transfer analysis.

Nor do Juniper's activities in this District entitle Monarch's choice of forum to greater weight. It is well-established that "[m]ere sales and marketing activity does not entitle [the plaintiff's] choice of forum to substantial weight when none of the infringing products were developed or produced in this District." *NanoEntek, Inc. v. Bio-Rad Labs., Inc.*, No. 2:11-cv-427, 2011 WL 6023189, at *3 (E.D. Va. Dec. 2, 2011) (citing *Agilent Techs., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 327 (E.D. Va. 2004)). Monarch does not contend that any of the infringing products were developed or produced here. Instead Monarch cherry-picks various examples of Juniper's activities in this District, while ignoring that Juniper has these sorts of activities and contacts nationwide. Opp. at 8-12. The crux of Monarch's argument is that the alleged infringement is "both highly concentrated and extensive" in this District such that this District "is a concentrated hub of infringement." *Id.* at 8, 14. That too is simply wrong: from 2017-2023, only about *1.6%* of accused products sold in the U.S. went to Virginia. Suppl. Martinez Decl., Ex. A. By contrast, nearly 30% went to California. *Id.* Courts in this District have given the plaintiff's choice of forum only "very slight weight" where the defendant's sales are not "unique to Virginia"

and less than ten percent of total sales of accused products were to Virginia. *Acterna, LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936, 938-39 (E.D. Va. 2001). Here, where only about 1.6% of sales were to Virginia, Monarch's choice of forum is entitled to even less weight.

Monarch's cases do not say otherwise. In *Certusview Technologies, LLC v. S&N Locating Services, LLC*, No. 2:13-cv-346, 2013 WL 6571833 (E.D. Va. Dec. 13, 2013), the defendants did not dispute that "the ***vast majority*** of all (purported) infringement [was] occurring in Virginia," and indeed the court there found that the alleged infringement was "occurring ***almost exclusively*** in Virginia." *Id.* at *3 (emphasis added). That is not this case: Juniper sells products, and its customers use those products, nationwide. And again, only about 1.6% of accused products sold in the U.S. are shipped to Virginia. As courts in this District have repeatedly held, it is not enough that "Virginia's residents purchase and use allegedly infringing products, methods, and systems from the defendants" because "the defendants likely have this same contact with every other state in this nation." *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 692 (E.D. Va. Aug. 3, 2007); *see also NanoEntek, Inc. v. Bio-Rad Labs., Inc.*, No. 2:11-cv-427, 2011 WL 6023189, at *3 (E.D. Va. Dec. 2, 2011).

Nor does *Trustees of Columbia University v. Symantec Corp.*, No. 3:13-cv-808, 2014 WL 1329417 (E.D. Va. Apr. 2, 2014) help Monarch. There, the facility in this District where infringement allegedly occurred was "the ***only*** domestic center of its kind." *Id.* at *7 (emphasis added). And even then the court held only that there was "a ***slight*** connection between this forum and the Infringement Claims." *Id.* at *8 (emphasis added). *Beam Laser Systems, Inc. v. Cox Communications, Inc.*, 117 F. Supp. 2d 515 (E.D. Va. 2000) found that nationwide alleged infringement can give rise to a connection to a particular forum only "if there is no center of infringement activity in a particular case." *Id.* at 519. Here, the center of the alleged infringement

is the district in which the Accused Products and Features were primarily designed and developed, where relevant documents and source code are kept, and where relevant witnesses live and work—Juniper's home forum in the Northern District of California.

## III. THE NORTHERN DISTRICT OF CALIFORNIA IS MUCH MORE CONVENIENT FOR THE PARTIES

Monarch inexplicably argues that the Eastern District of Virginia is a more convenient venue for two California-based parties than the Northern District of California. Opp. at 14-18. To support this anomalous position, Monarch offers a series of arguments that fail to withstand scrutiny.

*First*, Monarch self-servingly claims that, despite being based in California, "Virginia is slightly more convenient" for it. *Id.* at 14. But in the same breath, it admits that it would be burdened by litigation in this forum—arguing that it "will take on any burden of bringing evidence" to this District. *Id.* Monarch's purported willingness to bear a burden does not lessen that burden, or do anything to address the burden on Juniper. It is much cheaper and more convenient for witnesses in Southern California (as Monarch acknowledges two of its officers are (*id.*)) to travel up the coast to San Jose or San Francisco than it is for them to fly across the country to Alexandria. Indeed, Monarch's calculations show the flight time to this District is three or four times (each way) that of the time from Los Angeles to San Jose or San Francisco. Dkt. 53 ¶ 7. Those longer flights would also be much more expensive. Monarch's self-serving statement of its officers' willingness to travel should not factor into the transfer analysis. Equally irrelevant is Monarch's claim to maintain its documents on a server in Virginia. Opp. at 14. Monarch's declaration does not specify where in Virginia the documents are stored—but more importantly, Monarch admits it has a backup server (presumably with the same documents) ***in California***. *Id.* At best for Monarch, the location of its documents is neutral between the two districts. Thus, the

record is clear that the Northern District of California is far more convenient for Monarch and its witnesses than this District.

*Second*, Monarch makes much of the fact that, fourteen years ago, Juniper filed a patent infringement suit in this District. Opp. at 14-16. As an initial matter, and as Monarch admits, it would be error to afford that fact significant weight in the transfer analysis. *Id.* at 16 (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009)). Indeed, Monarch cites no appellate case and no case from a district court within the Fourth Circuit finding it proper to give such a fact ***any*** weight. But setting that aside, while Monarch points out that one of the defendants in the *Juniper v. GraphOn* case was based in Santa Clara, California, it neglects to mention that the other defendant there (Vertical Marketing, Inc., a licensed reseller that sold accused products) had its principal place of business in Manassas, Virginia. Dkt. 53-30 ¶ 3. And when GraphOn counterclaimed against Juniper, Juniper successfully moved to sever and to transfer the defensive case to the Northern District of California, its home forum and the hub of the allegedly infringing activity. *Graphon Corp. v. Juniper Networks, Inc.*, No. C 10-1412 JSW, 2010 WL 3619579, at *1 (N.D. Cal. Sept. 13, 2010). Juniper's conduct in that case is thus entirely consistent with its position here: a case should be heard in the forum that contains most of the witnesses and evidence, and in a patent infringement case that is usually the forum where at least one defendant resides.

*Third*, Monarch devotes considerable space to arguing that Juniper ***can*** make its technical documents and source code available in places other than its Sunnyvale headquarters. Opp. at 16-18. That entirely misses the point. The transfer analysis does not focus on what is ***possible.*** If it did, virtually no case would ever be transferred, because it is always ***possible*** to get documents, source code, and witnesses to any forum. Rather, transfer analysis is about ***convenience***. 28 U.S.C. § 1404(a). And there can be no serious dispute that it is more convenient for Juniper to try

the case in the district where it keeps most of the relevant documents,[2] and that it is more convenient (and secure) for Juniper to make its source code available in its home office. Mot. at 12. On that note, Monarch's assertion that Juniper "rarely, if ever, produces its source code" in Sunnyvale is wrong. Opp. at 16. In support, Monarch offers five examples *from 2012 and before* in which Juniper made source code available in other locations, generally at the offices of its outside counsel. *Id.*; Dkts. 53-34—53-38. The fact that, over a decade ago, Juniper occasionally made source code available outside of its Sunnyvale office does nothing to refute Juniper's argument that (because its procedures and security measures surrounding source code have changed) it is more convenient *today* for source code to be inspected at its headquarters. And in at least ten more recent cases, source code has been inspected there. Suppl. Martinez Decl., ¶ 3. Indeed, to Juniper's knowledge its code has not been inspected anywhere else since at least 2018. *Id.* ¶ 4.

Thus, Monarch's attempted misdirection fails, and the self-evident fact remains that the Northern District of California is a much more convenient venue for these two California-based parties than the Eastern District of Virginia.

---

[2] Monarch faults Juniper for using terms like "most" to describe the location of relevant documents and source code, claiming such descriptions are not specific enough. Opp. at 17. The Federal Circuit has expressly rejected this exact complaint. In *In re Juniper Networks, Inc.*, "the district court faulted [Juniper's] declaration as not being specific enough," and criticized "[v]ague assertions that the 'majority' of the evidence relating to the accused devices is located in California." 14 F.4th 1313, 1321 (Fed. Cir. 2021). The Federal Circuit held that "[t]hat criticism [was] unjustified" because the declaration explained that "records relating to the research and design of the Accused Products, source code, and marketing, sales, and financial information for the Accused Products" were in Sunnyvale, which was sufficient. *Id.* The same is true here. Martinez Decl. ¶ 12.

## IV.    THE NORTHERN DISTRICT OF CALIFORNIA IS MUCH MORE CONVENIENT FOR WITNESSES

"The cost of attendance for and convenience of the witnesses 'is probably the single most important factor in transfer analysis.'"  *Orbital Austl. Pty Ltd v. Daimler AG*, No. 3:14-cv-808, 2015 WL 4042178, at *7 (E.D. Va. July 1, 2015) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009)).  As Juniper explained, at least six Juniper employees knowledgeable about the design, development, and/or marketing of specific Accused Products and Features work in Sunnyvale, and another works in Southern California but regularly comes to Juniper's Sunnyvale headquarters.  Martinez Decl. ¶¶ 7, 10.  Mr. Martinez's declaration provided, for each potential witness, a description of their specific knowledge relevant to the case and their location.  *Id.*  Mr. Martinez also made clear that, to the extent Juniper identifies other relevant witnesses as the case progresses, "it is very likely that most of those employees will also work in Sunnyvale." *Id.* ¶ 11.

This Court found this factor to "heavily favor[]" Google's transfer motion in *Mira v. Google* based on a far less detailed declaration.  *Mira Advanced Tech. Sys. Inc. v. Google LLC*, No. 1:21-cv-00371-TSE-JFA, Dkt. 47 at *2 (E.D. Va. Sept. 22, 2021).  Indeed, the declaration there simply said that "[t]he team that develops and maintains Google Keep is led by a Software Engineer who is based in Google's New York City offices" and who "manages eleven other engineers who work on Google Keep, all of whom are based in Google's New York City offices." *Id.* Dkt. 33-1 ¶ 5.  Here, by contrast, Juniper listed each employee with relevant knowledge by name, job title, location, and Accused Feature.  Martinez Decl. ¶¶ 5-10.  If the declaration in *Mira* met Google's burden, the Martinez Declaration even more clearly meets Juniper's.  And indeed the Federal Circuit has held numerous times that similar declarations are sufficient to establish that the witness convenience factor weighs heavily in favor of transfer.  *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1316-17 (Fed. Cir. 2021) ("*Juniper I*"); *In re Juniper Networks, Inc.*, No. 21-156,

2021 WL 4519889 at *2 (Fed. Cir. Oct. 4, 2021) ("*Juniper II*"); *In re Apple Inc.*, 979 F.3d 1332, 1336 (Fed. Cir. 2020) (citing *In re Apple Inc.*, No. 20-135, Dkt. 2-1 at Appx105-09 (Fed. Cir. June 16, 2020)).

Monarch cites no case in which a court held that a remotely comparable declaration was insufficient. Instead, Monarch's cases merely stand for the general proposition that a party must provide the Court with enough information to assess each witness's impact on the convenience analysis, as Juniper has done. In *JTH Tax, Inc. v. Hines*, No. 2:15-cv-558, 2016 WL 4582081 (E.D. Va. July 26, 2016), the court noted that neither party had provided it with "a witness list or affidavits or other summaries of expected testimony" at all. *Id.* at *6. Similarly, in *Board of Trustees, Sheet Metal Workers National Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253 (E.D. Va. 1988), the defendant first offered "merely a conclusory statement that witnesses located in Indiana would be inconvenienced if the case were to go forward in Virginia" and then a similarly conclusory statement that six different witnesses' testimony would be needed regarding the defendant's time-keeping procedures. *Id.* at 1258. Here, by contrast, Juniper provided a list of knowledgeable employees and a description of their technical and/or marketing knowledge related to the Accused Products and Features, and identified where each of them works. Martinez Decl. ¶¶ 7, 10.

Monarch's citation to *Koh v. Microtek International, Inc.*, 250 F. Supp. 2d 627 (E.D. Va. 2003) is even further afield. *Koh* strongly supports **Juniper's** position. There, the court noted that "it is permissible to infer, absent any contrary evidence from the non-movant, that witnesses are located at or near the center of the allegedly infringing activities and that witnesses involved in the design and manufacture of the accused products are material." *Id.* at 636-37. That is exactly the case here. *Koh* then cited *Telepharmacy Solutions, Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741

(E.D. Va. 2003) as "finding sufficient proof of witness inconvenience where the defendant submitted a witness list confirming that most of the individuals involved in the design and manufacturing of the accused product were in California."  Again that is precisely what Juniper did.  Monarch's own cases refute Monarch's argument that Juniper's witness disclosure is insufficient.

Unable to meaningfully dispute the unsurprising fact that Juniper has numerous relevant witnesses at its headquarters in Sunnyvale, Monarch tries to distract from the issue with more red herrings.  Specifically, Monarch offers LinkedIn profiles of Juniper employees who work in or near this District and whose profiles and other public writings Monarch (often incorrectly) contends in some way reference one or more of the Accused Products and Features *among many others*.[3]  As an initial matter, Juniper made clear in its motion that it had resident and support engineers located throughout the country, including in this District, who work on the full suite of Juniper products.  Martinez Decl. ¶ 13.  Juniper further made clear that those witnesses have no specialized knowledge, and certainly no design or development knowledge, *specific* to the Accused Products and Features or to any other product or feature.  *Id.*

The LinkedIn profiles Monarch cites only confirm this. Bill Shelton, for example, is a Director of *Federal* Certifications and Policy.  Dkt. 53-24 at 1.  Monarch leaves out the word "Federal" from the description in its opposition, and does not try to refute Juniper's argument that because Juniper cannot be liable for sales to the federal government, Juniper employees who support the federal government's use of Juniper products could not be relevant witnesses even if they had knowledge specific to the Accused Products and Features.  Mot. at 10 n.3.  And Mr.

---

[3] The sheer number of purported witnesses Monarch identifies reveals its overreach and straw-grasping.  Monarch is not going to call fourteen Juniper employees as witnesses at trial.

Shelton's LinkedIn profile does not so much as mention the Accused Features Monarch claims it would have him testify about.  Dkt. 53-24.  As for Ron Bonica, his LinkedIn refers generically to MPLS among many other features and technologies (Dkt. 53-46), and he wrote a few sentences about MPLS in a public article Monarch cites.  Dkt. 53-47.  As another example, Majid Ansari works on (and lists on his LinkedIn profile) the full suite of Juniper products and features and works on network development generally, not specific to the Accused Products and Features.  Dkt. 53-49.  The remainder of the Juniper employees Monarch identifies simply list a few Accused Products on their LinkedIn profiles alongside the many other Juniper products for which they provide support, and never claim to have or identify any specialized knowledge (and certainly no development knowledge) as to the Accused Products or Features that would make them relevant witnesses.[4]  Dkts. 53-49-54.

As for Monarch's witnesses, Monarch does not claim to have any witnesses in or near this District.  Indeed, Monarch admits that two of its three officers are located in California, and that it is a much shorter and cheaper flight from Los Angeles to San Jose or San Francisco than it is from Los Angeles to Washington, D.C.  Opp. at 14; Dkt. 53 ¶ 7.  Thus, the Northern District of California is significantly more convenient for two of Monarch's three potential witnesses.  The third officer is based in Austin, Texas, which Monarch does not contend impacts the transfer analysis.  While Monarch asserts that its officers should be presumed willing witnesses, it is also worth noting that its two California-based officers are subject to compulsory process in the Northern District of

---

[4] Indeed, after reviewing Monarch's opposition, Juniper investigated the knowledge of the 14 employees Monarch identified.  Two no longer work at Juniper and the others have little if any knowledge specific to the Accused Features or their use by customers.  Suppl. Martinez Decl. ¶ 6. Of the two other Juniper employees for whom Monarch claims "this District is more convenient than the NDCA" (Opp. at 23), one now lives in Frisco, Texas—about equidistant between the two districts.  Suppl. Martinez Decl. ¶ 7.  The other is in Hungary (Opp. at 23)—well beyond the subpoena power of either court and a cross-ocean flight away from either.

California but not in this District.  That is true because Rule 45 provides that "[a] subpoena may command a person to attend a trial … within the state where the person resides, is employed, or regularly transacts business in person, if the person … is a party or a party's officer."  Fed. R. Civ. P. 45(c); *see also Juniper I*, 14 F.4th at 1316 (noting that "[t]wo of [plaintiff's] officers, its CEO and its president, reside in California and thus would be subject to compulsory process from a district court in the Northern District of California.").  Thus, the convenience of Monarch's witnesses also strongly favors transfer.

So does the convenience of non-party witnesses.  Monarch does not dispute that the IETF is located in California, but makes much of the fact that the IETF Trust is "established under the laws of Virginia."  Opp. at 24 (citing Dkt. 53-70).  But Monarch does not try to explain why the fact that the IETF Trust is established under Virginia law has anything to do with the transfer analysis.  Specifically, Monarch does not argue that the IETF Trust or its documents are physically located in Virginia.  And indeed, the very exhibit Monarch cites makes clear that the IETF Trust's address is in ***Fremont, California***—in the Northern District of California.  Dkt. 53-70.  Nor does Monarch dispute that its parent company, Acacia, is far closer to the Northern District of California than to this District.  While Monarch asserts that any necessary Acacia witnesses are willing to travel (Opp. at 25), the issue is not willingness but convenience, and it is undisputed that travel from Southern California to Northern California is cheaper and more convenient than travel from Southern California to Northern Virginia.  Monarch also cannot dispute that two relevant prior-art witnesses are located in the Northern District of California.  Mot. at 5-6, 11-12.  That district is thus more convenient for those witnesses, whether or not compulsory process is necessary.  And Monarch's list of the locations of other prior art witnesses only further supports Juniper's

argument: two such witnesses are in California and none are in Virginia.  Opp. at 25-26; Dkt. 53 ¶ 14.

The purported third-party witnesses Monarch identifies are irrelevant.  The original and former assignees of the asserted patents, as Monarch notes, are both overseas.  Opp. at 26.  Juniper does not contend that the Northern District of California is convenient for either, nor does Monarch contend that this District is.  Any discovery taken from them will be via the Hague Convention, which will be equally (in)convenient regardless of where the case is tried.  And the former Juniper employees Monarch lists, like the current employees it wrongly claims are relevant witnesses, do not have knowledge specific to the Accused Products or Features.  Mr. White, who in any event lives in Tennessee, beyond the subpoena power of either court, is listed as an author on one of the three Requests for Comments Monarch compiled into its Exhibit 74—but *not* the one that mentions MAP-E.  Dkt. 53-74 at 1, 8, 52-53.  Mr. Dong listed EVPN as one of over a dozen features with which he has experience, without any other mention of the accused features, and was on Juniper's testing and support staff and thus likely has no development knowledge or experience.  Dkt. 53-76.  And Mr. Whithed listing "QFX and EX series switches," along with multiple other Juniper and non-Juniper products, on his LinkedIn profile does not show he has relevant knowledge as to the relevant features.[5]  Dkt. 53-77.

Thus, the Northern District of California is far more convenient for party witnesses (including Monarch's own witnesses) and also significantly more convenient for non-party witnesses.  The witness convenience factor overwhelmingly favors transfer.

---

[5] Juniper products have dozens and sometimes hundreds of features, only a few of which Monarch accuses.  Thus, the fact that a Juniper employee mentions accused product lines on his or her LinkedIn does nothing to show he or she has relevant knowledge about the accused features.

## V.    THE INTERESTS OF JUSTICE STRONGLY FAVOR TRANSFER

### A.    The Local Interest Strongly Favors Transfer

The key factor determining local interest is where the accused products were "researched, designed, and developed."  *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021); *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020).  Here, Juniper's motion established that the Accused Products and Features were primarily designed and developed at Juniper's Sunnyvale headquarters.  Mot. at 3, 10; Martinez Decl. ¶ 5.  None of the design and development work was performed in Virginia.  Martinez Decl. ¶ 13.

Monarch disputes none of this.  Instead, it asserts that the relevant "products and features are not ***exclusively*** designed in the NDCA, but rather include contributions from personnel in 'China and/or India' as well."  Opp. at 28 (emphasis added).  But Monarch does not try to argue why that matters—why design and development work done in China or India should affect the transfer analysis between the Northern District of California and the Eastern District of Virginia.  Nor could it.  The Federal Circuit has repeatedly held that this factor favors transfer where most, even if not all, of the design and development took place in the transferee forum, especially where ***none*** took place in the transferor forum.  *Juniper I*, 14 F.4th at 1319 (error to find this factor weighed against transfer where "the events forming the basis for [plaintiff's] infringement claims occurred ***mainly*** in the Northern District of California" but "none occurred in the Western District of Texas") (emphasis added); *Samsung,* 2 F.4th at 1380 (error to find this factor weighed against transfer where "***most*** of th[e] applications" at issue were "researched, designed, and developed … in Northern California.") (emphasis added).

Monarch then claims that Juniper customers allegedly performing method claims in Virginia gives this District a local interest in the dispute.  Opp. at 28.  Under Monarch's theory, alleging customer use would subject Juniper to suit in every district in which Juniper has a

customer (regardless of whether Monarch can show actual use of the Accused Products and Features), which would be almost every district court in the country.  The Federal Circuit has expressly rejected that argument, holding (without distinguishing between apparatus and method claims) that "[t]he fact that infringement is alleged in the [transferor forum] gives that venue no more of a local interest than [the transferee forum] or any other venue." *Samsung*, 2 F.4th at 1380. The Federal Circuit has also unequivocally rejected patent plaintiffs' analogous arguments that sales in the transferor forum create a local interest that weighs against transfer, holding that "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).  And the only case Monarch cites in support of its argument, *Certusview Technologies, LLC v. S&N Locating Services LLC*, No. 2:13-cv-346, 2013 WL 6571833 (E.D. Va. Dec. 13, 2013), does not help it.  There, it was undisputed that "the vast majority of all (purported) infringement [was] occurring in Virginia" and indeed the alleged infringement consisted of "creat[ing] electronic maps of underground utilities located in Virginia." *Id.* at *3, *6.  Here even Monarch does not claim that the "vast majority" of alleged infringement takes place in Virginia, and in reality only about 1.6% of Accused Products sold in the United States are sold here, compared to the nearly 30% sold in California.  Suppl. Martinez Decl., Ex. A.

"This case concerns the status of an allegedly infringing product developed, maintained, and marketed by employees in the" Northern District of California.  *Mira*, 1:21-cv-00371-TSE-JFA, Dkt. 47 at *3.  The local interest strongly favors transfer.

### B.    Court Congestion Has Little If Any Relevance

Monarch relies heavily on its contention that this District would bring this case to trial more quickly than would the Northern District of California.  Opp. at 28-29.  But as Juniper's motion established, and as Monarch does not dispute, the Federal Circuit has repeatedly described court

congestion as "the 'most speculative' of the factors bearing on the transfer decision." *Juniper I*, 14 F.4th at 1322; *Genentech*, 566 F.3d at 1347; *Apple*, 979 F.3d at 1344 n.5.  And where, as here (and as Monarch again does not dispute), the plaintiff is a non-practicing entity, courts' relative speed is not "of particular significance." *In re Morgan Stanley*, 417 F. App'x 947, 950 (Fed. Cir. 2011).  Monarch has not identified any need for a fast resolution; nor could it since it does not make any competing products and has not sought an injunction.  Indeed, Monarch does not try to "point[] to any reason that a more rapid disposition of the case that might be available in [this District] would be important enough to be assigned significant weight in the transfer analysis here." *Samsung*, 2 F.4th at 1380-81.  Nor does it dispute that, where several other factors weigh in favor of transfer, relative speed should not outweigh those factors. *Genentech*, 566 F.3d at 1347.  Nor does it dispute this Court's holding that court congestion is "is rarely, if ever, a primary or decisive factor." *Mira*, 1:21-cv-00371-TSE-JFA, Dkt. 47 at *2-3 (citing *Convergence Techs. (USA), LLC v. Microloops Corp.*, 711 F. Supp. 2d 626, 643 (E.D. Va. 2010) and *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 997 (E.D. Va. 2011)).  Monarch's court congestion argument does not move the needle.

Neither does Monarch's attempt to smear Juniper by suggesting Juniper's true motive in moving to transfer the case is to run up Monarch's costs, selectively excerpting statements from a former Juniper employee who has no involvement in this litigation and who passed away in 2019. Opp. at 29-30.  In addition to having little if any relevance to any of the transfer factors, Monarch's argument is a *non sequitur* several times over.  As an initial matter, even accepting Monarch's speculation that the case will take longer to come to trial in the Northern District of California than it would in this District, it is not clear that doing the same amount of work in a shorter time would be cheaper for the parties.  And by moving the case to the Northern District of California, home

for Juniper and much closer to home for Monarch, the litigation will if anything be cheaper.  But even if it were more expensive to litigate the case in California, it would be more expensive for both parties.  The Court should reject Monarch's irrelevant and inaccurate mudslinging.

Thus, local interest is the only interest of justice factor that has any particular significance here, and it weighs heavily in favor of transfer.  The interest of justice strongly supports transfer.

**VI.     CONCLUSION**

For the foregoing reasons, Juniper respectfully asks that the Court transfer the case to the Northern District of California.

DATED:  August 24, 2023                    Respectfully submitted,


By _____
          */s/ Jared W. Newton*

Jared W. Newton
VA State Bar No. 80746
jarednewton@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, District of Columbia 20005-3314
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Todd M. Briggs (*pro hac vice*)
toddbriggs@quinnemanuel.com
Margaret Shyr (*pro hac vice*)
margaretshyr@quinnemanuel.com
Joseph E. Reed (*pro hac vice*)
joereed@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Fascimile: (650) 801-5100

Rachael McCracken (*pro hac vice*)
rachaelmccracken@quinnemanuel.com
Nima Hefazi (*pro hac vice*)
nimahefazi@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Fascimile: (213) 443-3100

*Counsel for Defendant*