UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| MONARCH NETWORKING SOLUTIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>JUNIPER NETWORKS, INC.,<br><br>Defendant. | Case No. 1:23-cv-00670-TSE-LRV |

**JUNIPER'S OPPOSITION TO MONARCH'S**
<u>**MOTION TO STRIKE**</u>

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1
II. FACTUAL AND PROCEDURAL BACKGROUND..........................................2
III. LEGAL STANDARD............................................................................................4
IV. ARGUMENT..........................................................................................................5
    A. Mr. Martinez's Supplemental Declaration Is Directly Responsive to Monarch's Arguments In Its Opposition ...................................................5
    B. Venue Discovery Is Unnecessary ..............................................................11
V. CONCLUSION....................................................................................................13

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acterna, LLC v. Adtech, Inc.*,
  129 F. Supp. 2d 936 (E.D. Va. 2001) ........................................................................7, 8

*Acumed LLC v. Stryker Corp.*,
  551 F.3d 1323 (Fed. Cir. 2008)...................................................................................5

*Aguilar v. LR Coin Laudromat*,
  2012 WL 1569552 (D. Md. May 2, 2012).................................................................2, 5

*In re Apple, Inc.*,
  52 F.4th at 1362 (Fed. Cir. 2022)................................................................................12

*Baugh v. City of Milwaukee,*
  823 F. Supp. 1452 (E.D. Wis. 1993)...........................................................................1, 4, 7

*BMC Software, Inc. v. Cherwell Software, LLC*,
  No. 1:17-cv-01074, 2017 WL 11501073 (E.D. Va. Dec. 21, 2017)..................................11, 12

*Chertoff Capital, LLC v. Syversen*,
  No. 20-cv-0138, 2020 U.S. Dist. LEXIS 253453 (E.D. Va. Dec. 8, 2020) .............................11

*Core Optical Techs., LLC v. Juniper Networks, Inc.*,
  8:19-cv-02189-JAK-RAO, Dkt. 1................................................................................4, 6

*Global Touch Sols., LLC v. Toshiba Corp.*,
  109 F. Supp. 3d 882 (E.D. Va. 2015) ..........................................................................6

*High Point SARL v. Sprint Nextel Corp.*,
  No. 2:08-cv-625, 2009 WL 10671368 (E.D. Va. May 18, 2009)......................................11, 12

*Ilozor v. Hampton Univ.,*
  No. 4:06-cv-90, 2007 WL 1310179 (E.D. Va. May 3, 2007),
  *aff'd*, 286 F. App'x 834 (4th Cir. 2008)..........................................................................1, 4, 6

*Kaia Foods, Inc. v. Bellafoire*,
  70 F. Supp. 3d 1178 (N.D. Cal. 2014) ........................................................................13

*Kershner v. Norton*,
  Civ. A. No. 02–1887, 2003 WL 21960605 (D. D.C. Aug. 14, 2003)................................ 1-2, 4

*Mercexchange, LLC v. eBay, Inc.*,
  467 F. Supp. 2d 608 (E.D. Va. 2006) ..........................................................................12

*TracBeam, LLC v. Apple, Inc.*,
    2015 WL 5786449 (E.D. Va. Sep. 29, 2015)............................................................................12

## Rules/Statutes

28 U.S.C. § 1404(a) .......................................................................................................................12

## Other Authorities

Local Civ. R. 7(E)............................................................................................................................4

## I.     INTRODUCTION

Monarch's motion to strike, filed without notice to Juniper or the required meet and confer, is another attempt to create the illusion of complexity around a motion that presents simple, largely undisputed issues.  Monarch also improperly seeks discovery that Monarch considered and decided not to pursue before filing its opposition.  Putting aside these procedural issues, the requested discovery also will not meaningfully impact the substance of Juniper's motion to transfer.

The key issues for Juniper's transfer motion remain undisputed and Monarch's motion has no impact on them.  The now-complete briefing on Juniper's motion has established that there is no dispute that this is a case between two California companies, both with their headquarters and most of their U.S. employees in California, and for which most relevant witnesses and documents are in or near the Northern District of California.  None of the requested discovery impacts those facts.  Instead, it relates to information about one small Juniper office in Herndon, Virginia.  Monarch's opposition to Juniper's transfer motion relied on publicly-available information to suggest there are relevant witnesses at this office and made several incorrect statements of fact in the process.  Juniper's reply brief corrected those inaccuracies and included a narrowly-tailored supplemental declaration providing evidence to support its response to Monarch's factual misstatements.  Monarch now moves to strike that declaration, or in the alternative to take two months of venue discovery (discovery it declined to seek before filing its opposition) and then file a sur-reply.  It is well established that reply evidence is proper to rebut arguments in the opposition, especially where (as here) the evidence is well within the scope of arguments in the opening brief.[1]

---

[1] *Ilozor v. Hampton Univ.,* No. 4:06-cv-90, 2007 WL 1310179, at *14 (E.D. Va. May 3, 2007) (declarations and evidence submitted with reply brief are not "new evidence" when "submitted to rebut the plaintiff's claim[s]"), *aff'd*, 286 F. App'x 834 (4th Cir. 2008); *see also Baugh v. City of Milwaukee,* 823 F. Supp. 1452, 1456–57 (E.D. Wis. 1993); *Kershner v. Norton*, Civ. A. No. 02–1887, 2003 WL 21960605, at *2 (D. D.C. Aug. 14, 2003); *Aguilar v. LR Coin Laudromat*, 2012 WL 1569552, at *2–3 (D. Md. May 2, 2012).

And there is no need for further discovery. The Court has all the facts it needs to weigh the convenience, for these two California-based companies, of the Northern District of California versus the Eastern District of Virginia. Monarch's motion should be denied.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Monarch sued Juniper in this Court on May 23, 2023, alleging infringement of four patents. Dkt. 1. On June 29, Juniper moved to transfer the case to the Northern District of California, its home forum and the location of the majority of its relevant witnesses and documents. Dkts. 35 and 35-2. Juniper's motion was supported by the declaration of Arthur Martinez, Juniper's Senior Director of Strategy and Corporate Development, who attested to various facts establishing Juniper's strong ties to the Northern District of California and comparatively very weak ties to this District. Dkt. 35-3.

The parties agreed to, and the Court ordered, a four-week extension for Monarch to file its opposition to the motion to transfer. Dkts. 45, 46. Despite the extra month, Monarch chose not to move for venue discovery. Monarch indicated on June 29 that it would seek venue discovery, Juniper said it did not believe discovery was needed, and Monarch then declined to pursue such discovery. Hefazi Decl., Ex. A. Instead, in an opposition filed on August 10, Monarch relied extensively on cherry-picked (often out of context and out of date) public information in an effort to create the impression that Juniper's activities in this District are so extensive as to make it a more convenient forum even for Juniper than Juniper's home district. Dkts. 52, 54-1.

Monarch's opposition included several factual statements that were misleading, incomplete, or simply wrong. Four are relevant here. *First*, Monarch—in arguing that its choice of forum is entitled to substantial weight despite it being a non-practicing entity that did not sue in its home forum—asserted that it "could not 'choose' to sue Juniper in Monarch's home, the Central District of California, because Juniper does not reside there and has no 'established place of

business' there." *Id.* at 7-8. *Second*, Monarch claimed the alleged infringement is "both highly concentrated and extensive" in this District such that this District "is a concentrated hub of infringement." *Id.* at 8, 14. *Third*, Monarch contended that Juniper "rarely, if ever, produces its source code" at its Sunnyvale headquarters, citing a few instances from 2012 and before in which Juniper made its code available at its outside counsel's offices. *Id.* at 16. *Fourth*, Monarch identified fourteen Juniper employees in or near this District, and claimed (based on those employees' LinkedIn profiles referring generically to certain Accused Products and Features among many other products and features) that those employees have unique and relevant knowledge and thus are potential witnesses. *Id.* at 20-24.

Juniper replied on August 24 and submitted a short supplemental declaration from Mr. Martinez, narrowly tailored to address Monarch's factually incorrect statements. Dkt. 56-1. Mr. Martinez attested that, contrary to Monarch's claim that Juniper "rarely if ever" makes its source code available in Sunnyvale, Juniper has in fact done so at least ten times in recent years, and to Juniper's knowledge has not made its code available elsewhere in any litigation since at least 2018. *Id.* ¶¶ 3-4. Mr. Martinez then relied on a review of various documents about and communications with the Juniper employees identified by Monarch to explain that their knowledge and experience is not specific to the accused features, and indeed that many have no familiarity with those features and are not aware of a Juniper customer ever using them. *Id.* ¶ 6. And, responding to Monarch's assertion that this District is "a concentrated hub of [alleged] infringement," Mr. Martinez attached as an exhibit a spreadsheet prepared by Juniper's finance team, showing that in fact only ***1.6%*** of Accused Products sold in the United States are shipped to Virginia. *Id.* Ex. A. Juniper's reply also cited a public court filing to show that, contrary to Monarch's claim that Juniper has no regular place of business in the Central District of California, Juniper has an office in Goleta, which patent

plaintiffs have used to establish venue against Juniper in that District.  Dkt. 56 at 2-3 (citing *Core Optical Techs., LLC v. Juniper Networks, Inc.*, 8:19-cv-02189-JAK-RAO, Dkt. 1 ¶ 5 (C.D. Cal. Nov. 12, 2019)).

Monarch, without having contacted Juniper to meet and confer as required by Local Civ. R. 7(E), filed its motion to strike on September 1.  Monarch purported to set the hearing for September 15, just two weeks after filing its motion, even though under the Local Rules Juniper's opposition would be due that same day.  Dkt. 64.  Monarch asserted that it "intends this non-dispositive motion to be briefed on the Court's expedited schedule."  *Id.*  But neither the Local Rules nor this Court's Standing Orders provide for such a schedule.  If Monarch means to rely on expedited briefing procedures set forth in scheduling orders issued in other cases, no such scheduling order has issued here and thus no such procedures are available.  Despite these procedural faults, Juniper files this opposition seven days after the filing of Monarch's motion to give the Court a fuller picture of the issues.

**III.     LEGAL STANDARD**

A moving party may submit additional declarations and evidence with its reply brief to address arguments and facts raised in the non-moving party's opposition.  *Ilozor*, 2007 WL 1310179, at *14.  Such declarations and evidence are "not new evidence, but clearly relate[] to evidence already presented, in an effort to rebut the plaintiff's allegations."  *Id.*; *see also Baugh*, 823 F. Supp. at 1456–57 (denying motion to strike new evidence where the reply affidavit "merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for the entry of summary judgment"); *Kershner*, 2003 WL 21960605, at *2 ("[F]iling an affidavit with a reply is appropriate when the affidavit addresses matters raised in the opposition.").  Further, where "the arguments made by Defendants in their reply brief are merely responses to new arguments made by Plaintiffs in their response," a sur-reply is not appropriate.

*Aguilar*, 2012 WL 1569552, at *3. And even where the use of new evidence on reply warrants an opportunity for the non-moving party to respond, the district court may properly allow that response to be oral at the hearing on the underlying motion. *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1332 (Fed. Cir. 2008) ("A district court must be allowed to halt the exchange of reply memoranda at some point.").

IV.    **ARGUMENT**

    A.    **Mr. Martinez's Supplemental Declaration Is Directly Responsive to Monarch's Arguments In Its Opposition**

Monarch's motion should be denied in full because the allegedly "new" evidence is directly responsive to incorrect statements Monarch made in its opposition, and ties back to issues raised and arguments made in Juniper's opening brief. Indeed, on each issue Monarch raises, the briefing followed a typical motion-response-reply sequence, particularly on a motion filed early in the case.

*First*, Juniper's opening brief showed that Monarch's choice of forum is entitled to minimal if any weight because, among other things, Monarch is a non-practicing entity and chose not to sue in its home forum. Dkt. 35-2 at 8 (collecting cases for the proposition that a plaintiff's choice of forum is entitled to little weight under such circumstances). Monarch's opposition raised a tangential issue, contending that it could not have sued in its home forum because Juniper has no regular and established place of business there. Dkt. 54-1 at 7-8. (Monarch admits the case could have been filed in the Northern District of California, the forum to which transfer is sought. *Id.*) Juniper's reply pointed out that claim is wrong—Juniper has an office in Goleta, California, and patent plaintiffs have used that office to lay venue against Juniper in the Central District of California, Monarch's home forum. Dkt. 56 at 2-3. Even if the public court filing Juniper cited can be considered new evidence, it "clearly relates to evidence already presented, in an effort to rebut the plaintiff's allegations" and is publicly available information in any event. *Ilozor*, 2007

WL 1310179 at *14.  Monarch then improperly uses its motion to strike to quibble with Juniper on the facts, citing a prior Juniper declaration in which Juniper accurately stated that the Goleta office is that of a company Juniper acquired in 2016.  Mot. at 13.  But that declaration acknowledged that "Juniper has a single office in Goleta, California," and Juniper moved to transfer that case for convenience, not to dismiss for improper venue.  *Core Optical Techs., LLC v. Juniper Networks, Inc.* 8:19-cv-02189-JAK-RAO, Dkt. 45-3 ¶9 (C.D. Cal. May 4, 2020).[2]

In any event, the discussion regarding Juniper's Goleta office is tangential at best.  The central point is that, ***even if this District were Monarch's home***, its choice of forum would still be entitled to minimal weight because it is "a non-practicing entity that does not even maintain an office in this district with a single full-time employee."  Dkt. 56 at 2 (quoting *Global Touch Sols., LLC v. Toshiba Corp.*, 109 F. Supp. 3d 882, 898 (E.D. Va. 2015)).  Monarch has never disputed the law or the fact that it is a non-practicing entity without an office or employee in this District.

*Second*, Juniper's opening brief established that there is no substantial connection between Monarch's infringement claims and this District, citing cases for the proposition that mere sales, distribution, and marketing of accused products in this District does not establish a connection that would entitle Monarch's choice of forum to substantial weight.  Dkt. 35-2 at 8-9.  Monarch's response cherry-picked anecdotal examples of Juniper's activities in this District, arguing that those activities showed that Juniper customers' alleged infringement of method claims in this District is so extensive relative to other districts that this District "is a concentrated hub of

---

[2] There was no need for Juniper to state in a declaration that this office exists, both because (as Monarch acknowledges) Juniper has already done so in public filings and because the relevant fact for purposes of Juniper's transfer motion is that plaintiffs have used that office to lay venue against Juniper in the Central District of California.  Dkt. 56 at 2-3.  For similar reasons, Monarch's citation to cases regarding subsidiaries' places of business misses the point.  The relevant fact is that plaintiffs have sued Juniper in the Central District of California, and Juniper has neither moved to dismiss for improper venue nor denied that the office in Goleta is its place of business.

infringement." Dkt. 54-1 at 8, 14. In reply, Juniper cited evidence showing that that is simply wrong: between 2017 and 2023, only **1.6%** of accused products sold in the United States were sold to Virginia (comprising only 1.4% of Juniper's U.S. sales revenue). Dkt. 56 at 3-4; Dkt. 56-2. This evidence directly rebuts Monarch's claim that a disproportionate amount of alleged infringement of method claims occurs in this District. It thus "merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for" transfer. *Baugh*, 823 F. Supp. at 1456–57.

Monarch does not dispute that the numbers Juniper provided are accurate, and does not try to refute the case Juniper cited holding that the plaintiff's choice of forum is entitled to only "very slight weight" where less than 10% of accused product sales were to Virginia. *Acterna, LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936, 938-39 (E.D. Va. 2001). Instead, it nitpicks the numbers in irrelevant ways. Monarch faults Juniper for not breaking down revenues into "product revenues," "software revenues," and "service revenues." Mot. at 10-11. But Monarch cites nothing—and Juniper knows of nothing—requiring such granularity at the motion to transfer stage.[3] Nor does Monarch cite (or Juniper know of) any authority that "profits" (*id.*) are relevant for determining the connection between a forum and the events underlying a lawsuit for transfer purposes. Monarch then faults Juniper for including sales numbers and revenues for California and Virginia as a whole instead of for the Northern District of California and this District. *Id.* at 11. Juniper—

---

[3] If Monarch means to suggest that Juniper did not provide revenue information at all, that is wrong. The second page of the sales spreadsheet shows Juniper's revenues for sales of accused products shipped to Virginia and California. Dkt 56-2. Juniper did not include revenue percentages in its reply because under Monarch's method-claim-infringement theory, the relevant statistic is units shipped to each state. But one can easily calculate revenue percentages from the data Juniper provided. No doubt Monarch did just that, and chose not to include the results in its motion to strike because those results do not help it. About 1.4% of Juniper's U.S. sales revenue was from sales to Virginia, and just under 36% came from sales to California. *Id.*

as is likely true of most companies—does not track product sales by judicial district. Monarch also ignores that courts have considered state-level sales data in evaluating this factor. *Acterna*, 129 F. Supp. 2d at 939. And even if one assumes **100%** of Juniper's U.S. accused product sales in Virginia were to this District (which is not the case), it would still be true that only **1.6%** of accused product sales are to this District, and courts have afforded the plaintiff's choice of forum minimal weight where less than **10%** of such sales were to **Virginia as a whole**. *Id.* And lastly, Monarch complains that Juniper provides insufficient detail in the spreadsheet. Mot. at 11. But the relevant fact—a very small percentage of Juniper's sales are to Virginia—is clear, and Monarch cannot contest it.[4] And Monarch again cites nothing requiring sales data down to the level of specific resellers or distributors at the transfer-motion stage. There is thus no reason to strike, or allow a sur-reply or discovery relating to, Juniper's undisputed assertion that only 1.6% of accused products sold in the United States are shipped to Virginia.

*Third*, Juniper's opening brief explained that Juniper prefers to make its source code available at its Sunnyvale headquarters given the competitive sensitivity and value of that source code, and that it would be more convenient for Juniper to have the case tried in the venue where it keeps the majority of source code related to the Accused Products and Features. Dkt. 35-2 at 4, 12. Monarch's opposition cited five cases from 2012 and before in which Juniper made its source code available elsewhere (usually its outside counsel's offices), and asserted that Juniper "rarely, if ever, produces its source code" at its Sunnyvale headquarters. Dkt 54-1 at 16. Juniper's reply

---

[4] Monarch's shape-shifting is also a preview of how it will behave during venue discovery if the Court grants it leave to take such discovery. Whatever information Juniper provides, Monarch will simply shift positions again and claim that some *other* piece of information is the real key to the transfer analysis, and demand Juniper provide that information. Especially in combination with the broad and intrusive nature of Monarch's proposed discovery requests, the predictable result will be lengthy, expensive, and needless discovery and motion practice.

pointed out that that too is wrong, citing numerous more recent cases in which Juniper's source code was inspected in Sunnyvale and noting that to Juniper's knowledge there is no case in which its code has been inspected elsewhere since at least 2018. Dkt. 56-1 ¶¶ 3-4.

Again, this is directly responsive to incorrect statements in Monarch's opposition. Again, Monarch does not dispute that it is true. And again, Monarch pivots to claiming it needs yet more information. Monarch faults Juniper for not explaining instances where it has "made its source code available *outside the context of litigation*." Mot. at 8 (emphasis in original). But Monarch cites nothing even suggesting that non-litigation source code inspections are relevant to the transfer analysis. Indeed, such information could only be relevant to show that it is *possible* for Juniper to make its source code available in locations other than Sunnyvale. But as Juniper explained (Dkt. 56 at 6-7) and as Monarch does not try to dispute, the inquiry for transfer purposes is not what is *possible* but what is *convenient*. The only relevant fact here is the self-evident fact that it is more convenient for Juniper to have the case tried in the venue in which it keeps its source code and in which it prefers to have that source code inspected. That pushes the "convenience of the parties" factor in favor of transfer.

*Fourth,* Juniper's opening brief identified several witnesses with relevant knowledge in the Northern District of California and explained that Juniper had no reason to believe witnesses with relevant knowledge of the design, development, or marketing of the Accused Products and Features would be found in this District. Dkt. 35-2 at 3-4, 9-10. Monarch's opposition tried to rebut this by selectively citing LinkedIn profiles and other public materials in which Juniper employees in or near this District referred generically to certain Accused Products and Features (among other products and features), without suggesting any relevant design or development knowledge. Dkt 54-1. Juniper's reply both pointed out Monarch's selective and misleading

citations and, relying on Mr. Martinez's supplemental declaration, explained that in fact the witnesses Monarch identified have "little if any knowledge specific to the Accused Features or their use by customers." Dkt. 56 at 11 n.4. Monarch's motion to strike again tries to confuse the issue by defining the Accused Features too broadly. Indeed, the ***only*** example Monarch cites in which it claims Mr. Martinez's supplemental declaration is inconsistent with public information relies on a YouTube video in which Majid Ansari speaks about EVPN generally. Mot. at 6. But as Mr. Martinez's supplemental declaration said, the accused functionality is far narrower than EVPN generally: "point-to-multipoint (P2MP) label-switched paths (LSP) to a VPLS or EVPN domain using pseudowires." Dkt. 56-1 ¶ 5; *see also* Dkt. 1 ¶¶ 22-26, 33. Speaking about EVPN in general does not indicate knowledge—certainly not unique design and development knowledge of the type that would make one a relevant witness on infringement issues—about the narrow sub-component of EVPN functionality at issue here.

And while Mr. Martinez's declaration made clear that a few of the employees Monarch identified have general knowledge of one or more accused features, that is entirely consistent with Juniper's position throughout the briefing of its transfer motion: Juniper engineers in this District "support the full suite of Juniper products and features (of which Juniper products have hundreds if not thousands) and do not have knowledge or expertise specific to any product or feature." Dkt. 36-2 at 4; *see also* Dkt. 56 at 11 ("The remainder of the Juniper employees Monarch identifies simply list a few Accused Products on their LinkedIn profiles alongside the many other Juniper products for which they provide support, and never claim to have or identify any specialized knowledge (and certainly no development knowledge) as to the Accused Products or Features that would make them relevant witnesses.").

Thus, there is no basis to strike any of Mr. Martinez's supplemental declaration or to allow Monarch the extensive discovery and sur-reply it requests. Each of the statements Monarch challenges is (1) directly responsive to incorrect statements Monarch made in its opposition to Juniper's motion to transfer, (2) relevant and accurate, and (3) consistent with Juniper's positions throughout the briefing of its transfer motion.

**B.      Venue Discovery Is Unnecessary**

Courts in this District routinely deny requests for venue discovery where the court "already has ample evidence on which to base the requisite analysis of defendants' motion to transfer venue."  *High Point SARL v. Sprint Nextel Corp.*, No. 2:08-cv-625, 2009 WL 10671368, at *1 (E.D. Va. May 18, 2009); *see also BMC Software, Inc. v. Cherwell Software, LLC*, No. 1:17-cv-01074, 2017 WL 11501073, at *2 (E.D. Va. Dec. 21, 2017) (denying venue discovery because there were "sufficient facts before [the court] to determine whether venue" is proper and there was "no reason to believe that venue discovery would alter the outcome of the venue analysis.").

Here, the Court has more than enough information (most of it undisputed) to evaluate the transfer factors.  Monarch is a non-practicing entity that sued a continent away from its home forum in a venue with no unique ties to this case (as evidenced by the very low percentage of Juniper's sales here), and its choice of forum is thus entitled to little if any weight. Dkt. 35-2 at 8-9; Dkt. 56 at 2-5.  The evidence involving location of documents, source code, and witnesses supports the self-evident proposition that the Northern District of California is more convenient for these two California-based parties than the Eastern District of Virginia.  Dkt. 35-2 at 11; Dkt 56 at 5-8.  So too with the witnesses: as one would expect for a case involving two California-based parties, there are far more potential witnesses with unique and relevant knowledge in or near the Northern District of California than in or near this District. Dkt. 35-2 at 9-12; Dkt. 56 at 8-14. And as to the only relevant interest of justice factor, local interest, it is undisputed that most of the

design and development of the Accused Products and Features took place in the Northern District of California and none took place in this District. Dkt 35-2 at 12-14; Dkt. 56 at 14-15. This case is thus on all fours with *High Point SARL* and *BMC Software*: "there is no indication of fraud or misconduct as to [Juniper's] affidavits and no reason to believe that venue discovery would alter the outcome of the venue analysis." *BMC Software*, 2017 WL 11501073, at *2

By contrast, in the case Monarch cites in which this Court ordered venue discovery, it did so because there was an outstanding question regarding whether the transferee forum (the District of Delaware) had personal jurisdiction over a party who had not signed the operative forum selection clause that required transfer of some of the claims at issue. *Chertoff Capital, LLC v. Syversen*, No. 20-cv-0138, 2020 U.S. Dist. LEXIS 253453, at *7 (E.D. Va. Dec. 8, 2020). The Court there thus did not have "facts sufficient to permit a § 1404(a) analysis" and permitted the parties to "undertake brief, jurisdictional analysis pertinent to the § 1404(a) analysis, chiefly on whether there is personal jurisdiction in Delaware over Braes." *Id.* That is nothing like the situation here.[5] The Court has more than enough information to decide Juniper's transfer motion

---

[5] Monarch's other cases are equally distinguishable. The plaintiff in *Mercexchange, LLC v. eBay, Inc.*, 467 F. Supp. 2d 608 (E.D. Va. 2006) submitted declarations from previously undisclosed experts in support of its renewed motion for a preliminary injunction following a remand. *Id.* at 611-12. The court there chose to "reopen the record" in a limited way but declined to strike the new declarations from experts that had never before been disclosed. *Id.* Here, Juniper submitted a narrowly-tailored supplemental declaration from a witness who had already provided a sworn declaration as to which Monarch chose not to pursue discovery. In *TracBeam, LLC v. Apple, Inc.*, 2015 WL 5786449 (E.D. Va. Sep. 29, 2015), Apple identified zero third-party (vendor) witnesses in its opening brief, then identified **15** such witnesses in its reply. *Id.* at *4. Here, as explained in detail above, Juniper's reply affidavit and evidence are directly responsive to statements Monarch made in its opposition brief. *Supra* at 5-11. In *In re Apple*, 52 F.4th 1360 (Fed. Cir. 2022), the district court sought to postpone ruling on Apple's motion to transfer until **all** fact discovery was complete. *Id.* at 1362. The Federal Circuit granted mandamus, mentioning that "[d]iscovery on the transfer motion itself is sufficient to allow decision of that motion." *Id. Apple* did not suggest that such discovery is **necessary** in any particular case, let alone a case like this one where the record contains enough evidence for a full and robust transfer analysis.

and any further discovery would needlessly consume resources. This is especially true where Monarch made a strategic decision not to pursue venue discovery early in this process—*see, e.g.*, *Kaia Foods, Inc. v. Bellafoire*, 70 F. Supp. 3d 1178, 1187 (N.D. Cal. 2014) (denying motion for venue discovery as untimely)—and flouted this District's meet and confer requirement.

## V.   CONCLUSION

For the foregoing reasons, Juniper respectfully asks that the Court deny Monarch's motion in full.

DATED: September 8, 2023  Respectfully submitted,

By    */s/ Jared W. Newton*
Jared W. Newton
VA State Bar No. 80746
jarednewton@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, District of Columbia 20005-3314
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Todd M. Briggs (*pro hac vice*)
toddbriggs@quinnemanuel.com
Margaret Shyr (*pro hac vice*)
margaretshyr@quinnemanuel.com
Joseph E. Reed (*pro hac vice*)
joereed@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Fascimile: (650) 801-5100

Rachael McCracken (*pro hac vice*)
rachaelmccracken@quinnemanuel.com
Nima Hefazi (*pro hac vice*)
nimahefazi@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Fascimile: (213) 443-3100

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2023, the foregoing was filed and served via the Court's CM/ECF system to counsel for Plaintiff.

By    */s/ Jared W. Newton*
       Jared W. Newton
       VA State Bar No. 80746
       jarednewton@quinnemanuel.com
       QUINN EMANUEL URQUHART & SULLIVAN, LLP
       1300 I Street NW, Suite 900
       Washington, District of Columbia 20005-3314
       Telephone: (202) 538-8000
       Facsimile: (202) 538-8100