**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **MONARCH NETWORKING** | ) | |
| **SOLUTIONS LLC,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 1:23-cv-670** |
| **v.** | ) | |
| | ) | |
| **JUNIPER NETWORKS, INC.,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

At issue in this patent infringement dispute is Defendant's Motion to Transfer Venue to the Northern District of California ("NDCa") (Dkt. 35) and Plaintiff's Motion to Strike Reply Evidence or, in the Alternative, to Conduct Venue Discovery (Dkt. 63). These matters have been fully briefed and argued, and they are ripe for disposition. For the reasons that follow, Defendant's Motion to Transfer must be granted, and Plaintiff's Motion to Strike must be denied.

## I.

The following relevant facts are undisputed:

- Plaintiff Monarch Networking Solutions LLC ("Monarch") is a California corporation with its principal place of business in Irvine, California, in the Central District of California ("CDCa").

- Monarch's parent companies, Acacia Research Group LLC and Acacia Research Corporation (together, "Acacia") are California corporations with their principal place of business in Newport Beach, California, in the CDCa.

- Monarch is a non-practicing entity whose business involves acquiring and enforcing patents. Neither Monarch nor its parents have any offices or employees in Virginia.

- Monarch is the assignee of U.S. Patent Nos. 8,451,844 ("the '844 Patent"), 8,451,845 ("the '845 Patent"), 8,693,369 ("the '369 Patent"), and 8,130,775 ("the '775 Patent") (together, "the Asserted Patents").

- The Asserted Patents were developed and invented by France Telecom S.A., now known as Orange S.A., in Paris, France. France Telecom assigned the patents to Transpacific IP Group Ltd., a Singapore limited company, which then reassigned the patents to Acacia. Acacia, in turn, assigned the Asserted Patents to Acacia's subsidiary, Monarch.

- Defendant Juniper Networks, Inc. ("Juniper") is a Delaware corporation with its principal place of business in Sunnyvale, California, in the NDCa. Sunnyvale is home to approximately 2,000 Juniper employees, substantially more employees than any other Juniper office.

- Juniper maintains a regular and established place of business in the Eastern District of Virginia ("EDVa") through its office in Herndon, VA ("the Herndon Office"). The Herndon office employs approximately 86 individuals.

- Monarch alleges that certain Juniper routers, switches, and accessories (the "Accused Products") that use MAP-E, MAP-T, VPLS, and/or EVPN functionalities (the "Accused Features") infringe one or more claims of the Asserted Patents. The Accused Products were researched and developed by Juniper at its Sunnyvale headquarters.

Monarch brought the instant action on May 23, 2023, alleging four counts of patent infringement in connection with the production, use, and sale of certain Juniper routers, switches, and accessories that allegedly infringe one or more of the claims of the Asserted Patents. On June 29, 2023, Juniper filed a motion to transfer venue to the NDCa (hereinafter "Juniper's Transfer Motion") pursuant to 28 U.S.C. § 1404(a).

After Juniper filed its reply in support of the motion to transfer (Dkt. 56) (hereinafter "Juniper's Transfer Reply"), Monarch filed a motion to strike evidence in Juniper's Transfer Reply or to conduct venue discovery in the alternative (hereinafter "Monarch's Motion to Strike"). Monarch contends that Juniper's Transfer Reply improperly asserts new factual allegations (i) that are false or misleading and (ii) are based on evidence that should have been disclosed previously in Juniper's initial motion to transfer.

## II.

Monarch's Motion to Strike must first be addressed before Juniper's Motion to Transfer can be resolved. Monarch objects to four contentions contained in a supplemental affidavit

2

attached to Juniper's Transfer Reply that Monarch alleges rely on improper new evidence: (i) that Juniper maintains an office in Goleta, CA, within the CDCa; (ii) that Monarch's proffered witnesses in Herndon, VA, lack sufficient knowledge of the Accused Products; (iii) that Juniper has produced its source code exclusively in Sunnyvale, CA, since 2018; and (iv) that Juniper's sales data show that a relatively small share of the Accused Products are sold in Virginia in comparison to the share of Accused Products sold in California.

## A.

Rule 6(c)(2), Fed. R. Civ. P., which governs motions and supporting affidavits, is silent on the timing and propriety of affidavits included in a reply. Most courts have construed Rule 6 to permit "reply affidavits that respond only to the opposing party's brief" and, in the face of new evidence, courts require that the nonmoving party have "an opportunity to respond." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 476–77 (6th Cir. 2002).[1] The Fourth Circuit has approved this use of reply affidavits. *See Amazon.com, Inc. v. WDC Holdings LLC*, No. 20-1743, 2021 WL 3878403, at *3 n.1 (4th Cir. Aug. 31, 2021). Importantly, "the opportunity to respond to new evidence" need not be in writing but can occur "orally." *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1332 (Fed. Cir. 2008). Although new evidence filed on the same day as a motion hearing has been struck as denying the opposing party an opportunity to rebut the new evidence adequately, *see Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 409–10 (1st Cir. 1985), reply affidavits filed seven days before a hearing have been found adequate to "permit the opposing party an opportunity to respond" orally. *Peters*, 285 F.3d at 476–77. Here, Juniper's reply was

---

[1] *See also Kershner v. Norton*, No. 02-cv-1887, 2003 WL 21960605, at *2 (D.D.C. Aug. 14, 2003); *McGinnis v. Se. Anesthesia Assocs., P.A.*, 161 F.R.D. 41, 42 (W.D.N.C. 1995); *Atl. Diving Supply, Inc. v. Basnight*, No. 2:22-cv-298, 2022 WL 18635840, at *2 (E.D. Va. Aug. 25, 2022)

filed more than three weeks before the hearing on the motion to transfer. Monarch had an adequate opportunity to respond to the allegedly new evidence, and Monarch has done so, both at the hearing and in writing.

**B.**

Monarch seeks either to strike the allegedly new evidence in Juniper's reply affidavit or for leave to conduct venue discovery if the evidence is considered. Neither is appropriate.

*First*, Juniper's Transfer Reply claims that Juniper "has an office in Goleta, California . . . squarely within the [CDCa]." Juniper Transfer Reply at 2. There is nothing improper about Juniper's disclosure. Monarch's response brief placed Juniper's presence in the CDCa at issue by alleging that Monarch could not establish venue in its home forum. *See* Monarch's Response to Motion to Transfer at 7–8 (Dkt. 54) (hereinafter "Monarch's Transfer Response"). Monarch does not claim procedural impropriety in Juniper's conduct; there is none. Instead, Monarch's motion "appears to conflate [Monarch's] objection to" the merits of Juniper evidence "with the motion to strike [this evidence] as 'new evidence.'" *Ilozor v. Hampton Univ.*, No. 4:06-cv-90, 2007 WL 1310179, at *14 (E.D. Va. May 3, 2007), *aff'd*, 286 F. App'x 834 (4th Cir. 2008).

While it is appropriate for Juniper's Transfer Reply to raise Juniper's presence in Goleta, that claim avails Juniper of nothing, as the office belongs to a Juniper subsidiary, Aurrion, Inc. A subsidiary's presence will not ordinarily suffice to establish venue under 28 U.S.C. § 1400(b) as "long as a formal separation of the entities is preserved." *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 931 (E.D. Va. 2017) (quoting 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3823 & nn.24–26 (4th ed.)). Because a "subsidiary's presence in the forum cannot be imputed to the parent company," Aurrion's presence in Goleta

4

would not permit Monarch to establish venue in the CDCa. *Id.* at 932 (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 335 (1925)).[2]

*Second*, Monarch and Juniper each offer a list of party witnesses that they allege would have relevant knowledge of the Accused Products and Features and for whom either the EDVa or the NDCa would be more convenient. Juniper's Transfer Reply includes a supplemental affidavit submitted by Arthur Martinez, a Senior Director of Strategy & Corporate Development at Juniper, which claims that most of the Juniper employees identified by Monarch lack specific knowledge of the Accused Products or Features. Dkt. 56-1 at ¶ 6 (hereinafter the "Martinez II Declaration"). Monarch asserts that the Martinez II Declaration unfairly relies on internal Juniper documents that have not been disclosed and that are in tension with other publicly available indicia of these employees' knowledge of the Accused Products and Features. *See* Monarch's Motion to Striker at 5–6. But the Martinez II Declaration merely notes that Monarch's EDVa-based witnesses have no special knowledge of the Accused Products and Features relative to other Juniper employees. There is no allegation of "any fraud or intentional misconduct" in Juniper's representations that would necessitate discovery. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) (upholding denial of jurisdictional discovery sought to rebut evidence presented by the movant). The Martinez II Declaration is a direct response to claims of witness convenience that were first raised in Monarch's Transfer Response. There is thus no basis

---

[2] Juniper's only response to the fact that the Goleta office belongs to a subsidiary is to note that in a different case brought against Juniper in the CDCa, Juniper did not object to improper venue but successfully moved to transfer that case to the NDCa under 28 U.S.C. § 1404(a). *See Core Optical Techs., LLC v. Juniper Networks, Inc.* No. 8:19-cv-2189, Dkt. 1 ¶ 7 (C.D. Cal. Nov. 12, 2019); *id.* at Dkt. 65 (April 1, 2021). Thus, the issue of improper venue was never addressed or resolved in that case.

to strike Juniper's declaration or to permit venue discovery that would only delay resolution of the transfer motion.

*Third*, Monarch contests Juniper's representation that Juniper has not produced its source code outside of Sunnyvale, CA, since 2018. Martinez II Declaration at ¶ 4. The sole basis for Monarch's objection is that Juniper's declaration omits instances where Juniper may have produced its source code outside the context of litigation. Monarch's objection to this claim is not grounds to strike the evidence, and Monarch's counsel correctly conceded this issue at oral argument. *See* Hearing Transcript at 10:4–25 (Dkt. 69).

*Fourth*, Monarch objects to sales data provided in an exhibit to Juniper's Transfer Reply. The data show that Juniper sells significantly fewer of the Accused Products in Virginia than Juniper does in California. The issue of Juniper's sales was raised throughout Monarch's opposition briefing. *See* Monarch's Transfer Response at 8–14. Therefore, it was appropriate for Juniper to respond directly to Monarch's claims with Exhibit A to the Transfer Reply, which includes sales figures from 2017–23 showing that only 1.6% of the Accused Products sold in the United States during that time were sold in Virginia, while nearly 30% of the Accused Products were sold in California. This information persuasively rebuts Monarch's claim that Juniper's alleged infringement in the EDVa is substantial and highly concentrated. Monarch further argues that the data present only a partial and potentially misleading picture of Juniper's commercial activities. Yet Monarch does not challenge the accuracy of the data, which clearly reflect that substantially more of the Accused Products are sold in California than in Virginia. Thus, this objection by Monarch provides no reason to strike the evidence.

In sum, there is no basis to strike the allegedly new evidence in Juniper's reply affidavit, nor is there any basis to permit venue discovery. Juniper's evidence is directly responsive to claims

that Monarch raised in Monarch's response brief. Moreover, Monarch has had a more than adequate opportunity to respond to this evidence, both orally at the hearing and in writing through the second round of briefing that followed Monarch's Motion to Strike. Nor is there any persuasive reason to allow venue discovery, which would transform a threshold determination of venue into a separate major litigation, thereby resulting in undue delay and increased litigation expense. Insofar as Monarch has objected as to the weight Juniper's evidence should be given, those claims are appropriately addressed as part of the transfer calculus.

**III.**

Analysis of Juniper's Transfer Motion properly begins with the governing statute, which provides that venue may be transferred to any "district court or division where it might have been brought." 28 U.S.C. § 1404(a). A case may be brought in a forum only if personal jurisdiction and venue are proper in that forum. For patent infringement claims, venue lies "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). A corporate defendant "resides" only in its state of incorporation for purposes of § 1400(b). *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 270 (2017).

Personal jurisdiction and venue would plainly be proper in the NDCA, the proposed transferee forum. Because Juniper has its principal place of business in Sunnyvale, CA, there is no doubt that there would be personal jurisdiction over Juniper in the NDCa. The NDCa is an appropriate venue because Juniper has "a regular and established place of business" there, at which Juniper engaged in allegedly infringing acts, including the design and sale of the Accused Products.

7

Because this case could have been brought in the NDCa, transfer to that forum may be appropriate "[f]or the convenience of parties and witnesses, [and] in the interest of justice . . . ." 28 U.S.C. § 1404(a). The decision to transfer is committed to the sound discretion of the district court. *See S. Ry. Co. v. Madden*, 235 F.2d 198, 201 (4th Cir. 1956). In making the transfer decision, a court must consider "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). Each factor is considered in turn.

## A.

A plaintiff's choice of forum is ordinarily entitled to substantial weight. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). But when "the plaintiff selects a forum other than its home forum and the claims bear little or no relation to the chosen forum," the "plaintiff's chosen venue is not given . . . substantial weight." *Koh v. Microtek Int'l. Inc.*, 250 F. Supp. 2d 627, 633 (E.D. Va. 2003); *accord U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 936 & n.30 (E.D. Va. 2005). Precisely this is true here.

Monarch's choice of forum is entitled to little weight because Monarch is a "non-practicing entity"—an entity that "merely acquires patents, licenses the technology, and sues alleged infringers"—with no presence outside of California. *Glob. Touch Sols., LLC v. Toshiba Corp.*, 109 F. Supp. 3d 882, 896 (E.D. Va. 2015) (internal citations omitted). Courts have uniformly "held in patent cases that it may be appropriate to afford a plaintiff's choice of forum 'minimal weight,' when the plaintiff has few business activities in the district and is appropriately classified as a 'non-practicing entity.'" *Id.* (collecting cases). Because Monarch is a non-practicing entity with

minimal business activities in the EDVa, its choice of forum is therefore entitled to minimal weight.

Seeking to avoid this conclusion, Monarch asserts that its choice of forum should be afforded deference because it could not sue Juniper in the CDCa—Monarch's home forum—as venue there would be improper. However, Monarch's inability to sue in the CDCa is not a persuasive factor against transfer, as the relevant inquiry is "the nexus between [the EDVa] and the plaintiff's underlying action." *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.* 702 F. Supp. 1253, 1257 (E.D. Va. 1988); *see also Glob. Touch Sols.*, 109 F. Supp. 3d at 896. Importantly, "in a patent infringement action . . . the preferred forum is that which is the center of the accused activity." *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999) (internal quotations omitted). The center of the accused activity in this case is California—specifically, the Northern District of California—not Virginia. Both Monarch and Juniper are headquartered in California, the Accused Products were researched and designed in the NDCa, and Juniper's documents and personnel tied to the Accused Products are located primarily in the NDCa. The NDCa is the focal point "of the infringing device[s] and the hub of activity centered around [their] production." *Id.* The only connection that the EDVa has to this action is Juniper's Herndon Office, and Monarch's argument for deference to its choice of forum rests on that connection. But Monarch's argument fails because it hinges on third-party sales that are neither unique to Virginia nor a basis to avoid transfer.

Monarch raises six infringing contacts with this forum: (i) Juniper conducts proof-of-concept testing of the Accused Products from the Herndon Office; (ii) Juniper partners with third parties to distribute and resell Juniper's products in the EDVa; (iii) Herndon houses one of Juniper's three customer training centers, one of its four technical assistance centers, and a sales

lab where Juniper personnel configure Juniper products for customers; (iv) Juniper publicly advertises customer case studies that include customers in Virginia; (v) Verizon, a customer of Juniper, has a contract with Virginia that requires Juniper's supply of the Accused Products; and (vi) Juniper certifies compliance with federal procurement requirements, including for the Accused Products, from its Herndon Office;

These contacts are unavailing; Monarch's evidence does not establish that the EDVa is the center of gravity for the accused infringing activity. Monarch points to only two specific instances of proof-of-concept testing in Herndon related to the Accused Products and offers no evidence of the relative share of testing that occurs in Herndon compared to Juniper's other testing labs, including Juniper's lab in the NDCa.[3] Monarch next identifies eighteen Juniper Authorized Partners in the EDVa, compared to seven Juniper partners in the NDCa.[4] But the relevant metric is the scale of infringement, not the number of Juniper partners. And Monarch offers no evidence tying Juniper's partners in either district to acts of infringement. Monarch's identification of Herndon as the site of a technical assistance center, training center, and sales lab suffers from a similar defect; Monarch does not tie Juniper's general customer support activities to specific acts of infringement, nor does Monarch show how any infringement activity in Herndon compares to Juniper's infringing activities in Sunnyvale. Because Juniper sells nearly twenty times as many Accused Products in California as in Virginia, it is likely that Juniper's allegedly infringing

---

[3] The record reflects that Juniper has four testing labs in Amsterdam, the Netherlands; Westford, MA; Herndon, VA; and Sunnyvale, CA. *See* Monarch's Transfer Response, Ex. 3 at 3–4 (Dkt. 53-3).

[4] Juniper partners distribute and resell Juniper products, including the Accused Products. *See* Monarch's Transfer Response, Ex. 25 at 5–8, 16–17 (Dkt. 53-25).

activities in the CDCa far exceed those in the EDVa.[5] As to Juniper's customer case studies, Monarch provides a dearth of information linking those customers to infringing acts. But even if those customers use the Accused Products, "the fact that Virginia's residents use the purportedly infringing products, methods, and systems avails [Monarch] nothing, as [Monarch] is not suing those residents in this action." *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 692 (E.D. Va. 2007). The same is true with regards to Verizon's contract with the Commonwealth of Virginia: the relevant conduct is Juniper's, "not [Juniper's] customers." *Id.* Yet most of the relevant contacts to this forum that Monarch trumpets merely relate to the acts of third-party customers. While "some Virginia residents presumably use the [Accused Products], nothing demonstrates that Virginia residents use th[ese products] more than residents of any other state." *Intercarrier Commc'ns, LLC v. Glympse, Inc.*, No. 3:12-cv-767, 2013 WL 4083318, at *3 (E.D. Va. Aug. 12, 2013) (denying the plaintiff's choice of forum substantial weight). To the contrary, Juniper's sales figures persuasively indicate that substantially more of the Accused Products are likely used by customers in California (where nearly 30% of Juniper's U.S.-based sales of the Accused Products occurred in recent years) than in Virginia (where only 1.6% of U.S.-based sales occurred). *See* Juniper Transfer Reply at 3–4; Martinez II Declaration, Ex. A.

In sum, Monarch is a non-practicing entity with no presence in the EDVa. The only connections between the EDVa and the alleged acts of infringement relate to sales and third-party conduct. In this regard, the record reflects that California, not Virginia, in the center of gravity for Juniper's allegedly infringing conduct. Thus, Plaintiff's choice of forum is appropriately given minimal weight in the transfer calculus.

---

[5] Approximately 1.6% of Juniper's U.S.-based sales of the Accused Products occur in Virginia, compared to nearly 30% in California. *See* Juniper Transfer Reply at 3; Martinez II Declaration, Ex. A.

**B.**

The next factor to consider is the convenience of the witnesses. Courts give greater weight to the convenience of "witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue." *Baylor Heating*, 702 F. Supp. at 1258. In contrast, courts give less weight to witness convenience "when the appearance of witnesses can be secured without the necessity of compulsory process." *Lycos*, 499 F. Supp. 2d at 693. It is not simply "the number[]" of witnesses inconvenienced that is "decisive on the question of transfer," but "the proposed relevance of witnesses' testimony." *Ala. Great S. R.R. Co. v. Allied Chem. Co.*, 312 F. Supp. 3, 9 (E.D. Va. 1970). The party asserting inconvenience "has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Koh*, 250 F. Supp. 2d at 636. The parties identified a number of party and nonparty witnesses. A careful review of the parties' list of witnesses and proposed testimony discloses that the convenience of witnesses neither favors nor disfavors transfer.

**1.**

With respect to party witnesses, Monarch names fourteen Juniper employees with knowledge of the Accused Features as likely witnesses, all of whom reside in or near the EDVa.[6] Juniper's Senior Director of Strategy & Corporate Development, Arthur Martinez, reviewed Monarch's witness list and contacted the employees identified by Monarch, and based on those communications, as well as Juniper files and records, Martinez determined that most of the employees lack specific knowledge about the Accused Features. *See* Martinez II Declaration at

---

[6] Monarch also identifies two Juniper employees based outside Virginia for whom the EDVa is somewhat more convenient than the NDCa.

¶ 6. Monarch claims that Juniper "should not be allowed to rely on 'facts that are exclusively controlled by the defendant[,]'" which Monarch claims unfairly "obfuscate[s] [] factual information." Monarch's Motion to Strike at 5 (quoting *Abstrax, Inc. v. Hewlett-Packard Co.*, No. 14-cv-158, 2014 WL 5677834, at *2–3 & n.1 (E.D. Tex. Nov. 4, 2014)) (internal alterations omitted). Not so. A "motion to transfer venue must be brought at an early stage in litigation when it is typically difficult to anticipate the identity of trial witnesses, or the matters upon which they will testify." *Prod. Grp. Int'l, Inc. v. Goldman*, 337 F. Supp. 2d 788, 800 (E.D. Va. 2004). A court must therefore rely on preliminary assessments of preliminary lists of witnesses. The only "reliable information" to make such a determination typically comes "in affidavit form" based on facts exclusively controlled by one party. *Baylor Heating*, 702 F. Supp. at 1256. Permitting discovery (or discrediting evidence) because one party lacks equal access to information would either unduly delay resolution of venue or else leave a court devoid of evidence. In other words, as Monarch's authority recognizes, resolution of motions to transfer venue—typically brought near the outset of litigation—necessarily require a court to rely on parties accurately to "disclose the facts underlying the motions they file," as "most, if not all, of the relevant facts are [often] exclusively controlled by" one of the parties. *Abstrax, Inc.*, 2014 WL 5677834 at *3.

Monarch also claims that Juniper's declaration should be discredited because it contradicts publicly available information about these employees' knowledge. *See* Monarch's Motion to Strike at 6 (these employees "openly advertise[] their knowledge and familiarity with the accused products and features"). But there is no contradiction. Monarch's witness list is primarily based on employees' LinkedIn profiles and YouTube videos. *See, e.g.*, Monarch's Transfer Response, Exs. 24, 46–62, 65–67. To be sure, the employees publicly assert *some* familiarity with the Accused Features of the Accused Products. But mere knowledge of a feature does not make an employee a

13

necessary or even likely trial witness. As Juniper notes, the identified employees deal with the full suite of Juniper products, including the Accused Products, among many others. *See* Juniper's Transfer Reply at 10–11. Monarch's proposed witnesses possess no special knowledge of the Accused Products to distinguish them from Juniper employees throughout the nation. Monarch can depose these employees if this case is transferred to the NDCa, *see* Rule 45, Fed. R Civ. P., and Monarch may determine after discovery that these witnesses lack adequate knowledge or that other Juniper employees are more relevant trial witnesses. If some of the Herndon employees prove necessary, their deposition testimony may be used at trial if the witnesses are otherwise unavailable. *See* Rule 804, Fed. R. Evid. At this early stage, however, it seems more likely that Monarch simply chose these employees because they are in Herndon, as the materiality of their testimony is in doubt given the parties' opposing contentions in this case. Monarch's witness list therefore does not persuasively weigh against transfer, as the record is conflicting as to the scope and depth of the knowledge of the Herndon employees.

Juniper identifies eight of its employees with knowledge of the Accused Features as likely witnesses, five of whom work in its Sunnyvale office in the NDCa.[7] Juniper also points to two employees with knowledge of the sales and marketing of the Accused Products who reside in or near the NDCa. Juniper's witness list states that the employees listed possess "technical and development knowledge" but gives little guidance regarding how each witness's testimony will be material and non-cumulative. Juniper's Transfer Motion, Declaration of Arthur Martinez ¶¶ 7–10 (Dkt. 35-3) (hereinafter the "Martinez I Declaration"). It is understandably difficult to predict

---

[7] Of the remaining three, one works in Westford, MA, for whom the EDVa would be more convenient, while the other two work in Bangalore, India, for whom neither forum is necessarily more convenient.

likely trial witnesses and their anticipated testimony this early in the litigation. But it is nonetheless important for a proper assessment of the transfer analysis.

Juniper claims that *Mira Advanced Tech. Sys. Inc. v. Google LLC* granted transfer based on a less detailed declaration than the one provided by Juniper here. Order Granting Transfer at 2, No. 1:21-cv-371 (E.D. Va. Sept. 22, 2021), Dkt. 47. The record in *Mira* does not support Juniper's claim. In *Mira*, a dozen potential witnesses were identified in the transferee district, the plaintiff's lone witness in the EDVa was unlikely to testify, and the plaintiff conceded that "the proposed transferee venue[] appears to favor [defendant] in terms of convenience of [defendant]'s employee witnesses." *Id.*; Plaintiff's Response to Transfer Motion at 4 (E.D. Va. Aug. 17, 2021), Dkt. 39. On that record, witness convenience clearly favored transfer. *Mira* did not conclude—and does not stand for the proposition that—parties can offer nondescript witness lists to satisfy their burden on transfer. Nor does any other authority cited by Juniper suggest otherwise.[8]

In sum, the convenience of party witnesses has not been shown to favor or preclude transfer.

**2.**

The convenience of nonparty witnesses is typically "afforded greater weight in deciding a motion to transfer venue" than the convenience of party witnesses. *Intercarrier Commc'ns*, 2013

---

[8] Juniper cites to two cases where the Federal Circuit—applying the Fifth Circuit's test for venue transfer, which is similar to that applied by the Fourth Circuit—granted Juniper a writ of mandamus requiring transfer of venue to the NDCa. Neither case is persuasive or controlling here. The Federal Circuit's *In re Juniper Networks, Inc.* (hereinafter "*Juniper I*") decision found that § 1404(a) required transfer when there was a "striking imbalance in the parties' respective presentations" on witness convenience. 14 F.4th 1313, 1318–19 (Fed. Cir. 2021). The Federal Circuit's *Juniper II* decision rested on "remarkably similar facts" where Juniper identified multiple possible witnesses in the transferee forum and the plaintiff "identified no willing witnesses in" the transferor venue. *In re Juniper Networks, Inc.*, No. 21-156, 2021 WL 4519889, at *1–2 (Fed. Cir. Oct. 4, 2021).

WL 4083318, at *3–4 (quoting *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 718 (E.D. Va. 2005)). Juniper identifies two entities and two individuals that it claims will likely be nonparty witnesses: (i) Monarch's parent company, Acacia, based in the CDCa; (ii) the Internet Engineering Task Force ("IETF"), a standards organization based in the NDCa; (iii) Ting Zou, a resident of the NDCa and former Huawei engineer who coauthored prior art; and (iv) Rahul Agrawal, a former Juniper employee based in the NDCa who is a named inventor on a prior art reference.

Juniper asserts that Acacia likely has information on the Asserted Patents but identifies no witnesses from Acacia whose testimony would be necessary. It therefore cannot be a persuasive consideration in the transfer analysis.[9] Nor are possible witnesses from the IETF relevant to the transfer analysis. Juniper again identifies no witnesses from the IETF who are likely to be necessary at trial. The IETF it is a technical standards body for the Internet. As Juniper's own exhibits highlight, the IETF does not maintain membership. IETF participants come "from all over the world" and "are considered volunteers." Juniper's Transfer Motion, Ex. C, at 1–2. The IETF has "very few full-time employees" and "almost never" participates in litigation. *Id.* at Ex. D, 2–3. Insofar as the IETF possesses information relevant to this dispute, that information will likely be disclosed through requests for document production. Those documents are largely public, and the IETF encourages parties in litigation to submit informal requests for information. *Id.* at 1. On this record it does not appear likely that any IETF witnesses will be required.

---

[9] In a prior infringement action brought by Monarch involving the Asserted Patents, another court also found it unlikely that Acacia witnesses would be necessary at trial. *See Monarch Networking Sols. LLC v. Cisco Sys., Inc.*, No. 2:20-cv-00015, 2021 U.S. Dist. LEXIS 1551, at *18, 28 (E.D. Tex. Jan. 5, 2021). Juniper has offered no reason why a different result should be reached here.

Juniper's claims of inconvenience for Ms. Zou must also fail. Juniper offers no information regarding her potential testimony or how it will be material and non-cumulative. Indeed, Juniper does not even specify which of the Asserted Patents her testimony will be relevant to. Without "particularized information," it is impossible "to ascertain how much weight to give [Juniper's] claim of inconvenience." *Baylor Heating,* 702 F. Supp. at 1258. In contrast, Mr. Agrawal is a named inventor in one of the prior art references in an earlier *inter partes* review against one of Monarch's Asserted Patents in this case. Although Monarch notes that Juniper does not list other inventors from other references as possible witnesses, that fact is unremarkable, as Juniper need not rely on the testimony of other prior art inventors to show that this witness has relevant testimony.

Monarch offers three former Juniper employees that it claims are likely nonparty witnesses. According to Monarch, these former employees will testify on the development of the Accused Functions, their implementation in the Accused Products, and Juniper's alleged inducement of third-party infringement. One witness resides in D.C., one resides in Virginia, and the third resides in Tennessee. Monarch notes that it would be unable to subpoena these witnesses in the NDCa. *See* Rule 45(c)(1)(A), Fed. R. Civ. P. But the Tennessee-based witness would similarly be outside the subpoena power of the EDVa, and Juniper would face a comparable burden as to its prior art witnesses should this case remain in EDVa. Other potential nonparty witnesses, such as Orange S.A. and Transpacific IP Grp. Ltd. (the former assignees of the Asserted Patents), reside outside the U.S., and neither venue would be more convenient for them.

In sum, both parties have shown some inconvenience to party and nonparty witnesses whether the case is transferred out of or retained in the EDVa. Thus, the "witness convenience and access" factor is in equipoise between the EDVa and NDCa. Because plaintiff's choice of forum

merits little weight, and the witness convenience factor is in equipoise, the decision to transfer venue turns on the last two factors: convenience of the parties and the interest of justice.

**C.**

The third factor is the convenience of the parties, which looks to the "ease of access to sources of proof, the costs of obtaining witnesses, and the availability of compulsory process" in each forum. *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 668 (E.D. Va. 2010). Party convenience "is chiefly operative in cases where the plaintiff chooses a forum away from home." *Baylor Heating,* 702 F. Supp. at 1259; *accord Bluestone Innovations, LLC v. LG Elecs., Inc.*, 940 F. Supp. 2d 310, 316 (E.D. Va. 2013). Transfer should not simply "shift the balance of inconvenience" from the defendant to plaintiff. *Smithfield Packing Co., Inc. v. V. Suarez & Co., Inc.*, 857 F. Supp. 2d 581, 589 (E.D. Va. 2012).

Juniper asserts that technical documents related the Accused Products and their sale, cost, and marketing, as well as the majority of Juniper's source code, are stored at its Sunnyvale headquarters in the NDCa. Juniper further claims that most of the engineers who developed and maintain the Accused Products are based in Sunnyvale. Monarch correctly responds that Juniper does not specify how much evidence is in Sunnyvale,[10] and Monarch further asserts that it will seek evidence from Juniper's Herndon Office. But considering "that the allegedly infringing [products] w[ere] designed and maintained in [the NDCa], it is very likely that a plethora of

---

[10] Specifically, Juniper claims that "much of the documentary evidence" relevant to this matter is stored in Sunnyvale. Martinez I Declaration ¶ 12. Juniper further alleges that the Federal Circuit has previously found similar descriptions sufficient to support transfer. *See* Juniper's Transfer Reply at 7 n.2 (citing *Juniper I*). But the declaration at issue in *Juniper I* asserted that a "'*majority*' of the evidence" was in California. 14 F.4th at 1321 (emphasis added). There is an important difference between that claim and the one asserted here. While a "majority" tells a court that more than half of the evidence is in a particular forum, "much" is a standard without a boundary that offers no guidance on the quantum of evidence—and the corresponding burden—at issue.

18

relevant evidence . . . resides in that district." *Mira Advanced Tech. Sys.*, No. 1:21-cv-371, Order Granting Transfer at 2; *see also In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (affording greater weight to "the place where the defendant's documents are kept" because "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.").

If compulsory process proves necessary, the NDCa would be a far more favorable forum for the parties. Juniper is headquartered in the NDCa and the NDCa is home to the single largest share of Juniper employees, including the employees who designed the Accused Products. Monarch is headquartered in California, and two of its three corporate officers reside there. Although these witnesses would be subject to subpoena in the NDCa, all would be outside the subpoena power of the EDVa. *See* Rule 45(c)(1)(B), Fed. R. Civ. P.

Monarch raises a string of patent infringement actions that Juniper has brought outside the NDCa to assert that it is convenient for Juniper to litigate outside the NDCa. But those actions cannot significantly weigh against transfer, as Monarch itself concedes. *See* Monarch's Transfer Response at 16. Juniper's choice to litigate unrelated matters outside the NDCa does not show that litigating in the EDVa would be less inconvenient, particularly when development of the Accused Products primarily occurred in the NDCa. Moreover, Monarch does not—and cannot— persuasively assert that the NDCa would be less convenient for Monarch than the EDVa. Monarch is a California corporation, its sole office is in California, and two of its three identified officers reside in California.[11] In contrast, Monarch has no presence in the EDVa or Virginia. Thus, transferring this case to the NDCa would not simply shift the burden or inconvenience from one

---

[11] The third officer resides in Austin, TX, so neither venue is more convenient for that officer.

party to the other, but would instead be more convenient for *both* Juniper and Monarch. Hence, the convenience of the parties favors transfer to the NDCa.

### D.

The final factor, the interest of justice, "encompasses public interest factors aimed at systemic integrity and fairness." *Heinz Ketter GMBH*, 750 F. Supp. 2d at 669 (quoting *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006)). This includes any pending related actions, the interest in having local controversies decided at home, and the court's familiarity with applicable law. *See U.S. Ship Mgmt.*, 357 F. Supp. at 937. The "ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947).

Here, the public interest factor points persuasively in favor of transferring this case to the NDCa. The center of gravity of this dispute is the NDCa, not the EDVa. *See GTE Wireless, Inc.*, 71 F. Supp. 2d at 519 (granting transfer because the center of gravity existed in the transferee forum). This is so because (i) Monarch is a resident of California, and its only office is in that state; (ii) Juniper's principal place of business and largest office is in the NDCa; (iii) the Accused Products were researched and developed in the NDCa; (iv) technical documents and records related to the cost, sale, and marketing of the Accused Products are in the NDCa; and (v) a majority of Juniper's source code is housed on servers located in the NDCa.[12] Virginia's ties to this case, as alleged by Monarch, primarily relate to Juniper's sales of the Accused Products to customers not party to this action. *See supra* § III.A. Even as to this lone Virginia connection, Juniper's sales

---

[12] Monarch notes that the design of the Accused Products did not occur exclusively in the NDCa, but also took place in China and/or India. Even so, that does nothing to undermine the favorability of the NDCa, where at least some design took place, over the EDVa, where no such acts occurred.

figures show that in recent years, only 1.6% of the Accused Products sold in the United States were sold in Virginia, while nearly 30% were sold in California. Monarch raises various challenges to the relevance of these sales figures to the transfer decision.[13] But Monarch cannot dispute the clear picture the data present: the NDCa has a far greater claim as the center of infringement than does the EDVa. Even if Juniper's sales figures were disregarded, Virginia is just one of the many places where Juniper's alleged induced infringement allegedly occurred. Far from "a concentrated hub of infringement activity," as Monarch claims the EDVa to be, Monarch's Transfer Response at 28, Virginia's ties to this case are more akin to the "same contact [Juniper has] with every other state in this nation." *Lycos*, 499 F. Supp. at 692.

Because of the minimal ties that this case has to Virginia, Virginia citizens have little interest in resolving this dispute. California citizens, by contrast, have an interest in resolving the case, as it involves an alleged injury to a California corporation by a California business resulting from events that occurred primarily in California. *See*, *e.g.*, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947) (describing the "local interest in having localized controversies decided at home."). Finally, although Monarch notes that the EDVa produces speedier resolutions of disputes, docket congestion is not given "important weight" in the transfer analysis. *Juniper I*, 14 F.4th at 1322; *see also Mira Advanced Tech. Sys.*, No. 1:21-cv-371, Order Granting Transfer at 2–3 ("the speed of the Eastern District . . . 'is rarely, if ever, a primary or decisive factor'"); *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 997 (E.D. Va. 2011) (same).

---

[13] Specifically, Monarch claims that this data should be disregarded because (i) it lists unit shipments rather than revenues or profits; (ii) the data compares states rather than judicial districts; and (iii) the data does not indicate if it includes sales from resellers and distributors.

**IV.**

This case plainly belongs in the NDCa because that district is the center of gravity of this case. While plaintiff's choice of forum is entitled to little weight and does not preclude transfer, and the convenience of the witnesses does not point persuasively to either district, the convenience of the parties and the interest of justice point persuasively toward transfer. Monarch is a non-practicing entity with no connection to the EDVa or Virginia. Juniper's ties to the EDVa are primarily through sales and customer support activities, conduct which Juniper undertakes nationwide and to a larger degree in the NDCa than the EDVa. These California-headquartered parties disputing infringement by products researched, developed, and primarily sold in California should litigate their dispute in a California forum. Accordingly, Juniper's Motion to Transfer must be granted, and, for the reasons stated above, Monarch's Motion to Strike must be denied.

An appropriate Order will issue.

The Clerk of the Court is directed to provide a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
October 3, 2023

T. S. Ellis, III
United States District Judge